UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

TANYA BELL,

                          Plaintiff,

              v.

ANDREW M. SAUL,
*Commissioner of the Social Security Administration*,

                       Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-2392 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Tanya Bell commenced the above-captioned action pursuant to 42 U.S.C.

§ 405(g) on May 29, 2020, seeking review of a final decision of the Commissioner of the Social

Security Administration (the "Commissioner") denying her claim for disability insurance

benefits ("DIB") under the Social Security Act (the "SSA").  (Compl., Docket Entry No. 1.)

Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure, arguing that Administrative Law Judge Robert R. Schriver (the "ALJ") erred by

(1) improperly determining that Plaintiff's spinal problems did not meet the requirements of

Listing 1.04, or any other listings, and (2) improperly analyzing Plaintiff's medical impairments

and assigning the wrong weight to several medical opinions, including that of Plaintiff's treating

physician, in determining Plaintiff's residual functional capacity ("RFC").  (Pl.'s Mot. for J. on

the Pleadings, Docket Entry No. 17; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket

Entry No. 16.)  The Commissioner cross-moves for judgment on the pleadings, arguing that the

ALJ correctly found that Plaintiff's impairments do not meet the requirements of Listing 1.04,

that substantial evidence supports the ALJ's RFC findings, and that the ALJ properly weighed

the medical opinion evidence.  (Comm'r Mot. for J. on the Pleadings ("Comm'r Mot."), Docket

Entry No. 19; Comm'r Mem. in Supp. of Comm'r Mot. ("Comm'r Mem."), Docket Entry No.

19-1.)

For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the

pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.

**I.   Background**

Plaintiff was born in 1964 and completed the ninth grade.[1]  (Certified Admin. R. ("R.")

63, 175, Docket Entry No. 15.)  Plaintiff last worked as a salesclerk at Macy's from January of

2013 until June of 2015.  (R. 65–66, 199.)  Prior to her job at Macy's, Plaintiff worked at

Osborne Association in a maintenance and construction position that involved heavy lifting and

use of machinery.  (R. 64–65.)  Plaintiff hurt her back while at Osborne Association.  (R. 66.)

On February 2, 2017,[2] Plaintiff applied for DIB, (R. 175), stating that she had become disabled

as of May 1, 2016, due to stomach problems, migraines, back pain, asthma, and mental illness,

(R. 197–203).

On May 4, 2017, the SSA denied Plaintiff's application, (R. 89–98), and Plaintiff

subsequently requested a hearing before an administrative law judge, (R. 130–133).  The ALJ

held an administrative hearing on December 10, 2018.  (R. 55–88.)  By decision dated January

10, 2019, the ALJ found that Plaintiff was not disabled.  (R. 37–54.)  Plaintiff submitted

additional evidence to the Appeals Council.  (R. 31.)  On April 7, 2020, the Appeals Council

---

[1]  Plaintiff stated in a report of disability that she completed the tenth grade in 2006.  (R. 199.)

[2]  Although the ALJ's decision states that Plaintiff filed this application on January 27, 2017, (R. 40), the application is dated February 2, 2017, (R. 175).

denied review, rendering the ALJ's decision the final decision.  (R. 30–35.)  Plaintiff filed a timely appeal with the Court.  (Compl.)

### a.  Hearing before the ALJ

On December 10, 2018, the ALJ heard testimony from Plaintiff and vocational expert Stephen Davis (the "VE").  (R. 56–58.)

#### i.  Plaintiff's testimony

Plaintiff worked in a "maintenance and construction-like" position for Osborne Association that required her to use floor waxing and stripping machines and to carry more than fifty pounds.  (R. 64–65, 80–81.)  Plaintiff injured her back while on the job.  (R. 64–65.) Following her departure from Osborne Association in 2010, Plaintiff worked part-time as a salesperson in the men's department at Macy's, where she made less than $5,000 a year in 2013 and 2014.  (R. 65–66.)  The position at Macy's required Plaintiff to spend the day on her feet. (R. 65–66.)  "[M]ost of the time," however, Plaintiff "used to just say [she] had to go to the bathroom so [she] c[ould] sit down, because of [her] back problems."  (R. 66.)  Plaintiff did not remember when she last worked, but agreed that the statement on her application that she became disabled in May of 2016 was accurate.[3]  (R. 64.)

Plaintiff did not remember precisely when she began receiving treatment for her back problems, but recalled that she first went to the hospital for treatment after noticing while she was lying in bed that "the pain was getting so severe."  (R. 67.)  "[B]ack in at least 2016," when Plaintiff first sought medical attention, she could "hardly walk to the bathroom" and could walk "maybe two blocks" before resting and her ability to stand still was limited "a little bit."  (R. 69–

---

[3]  During a psychiatric exam on April 12, 2017, with Dr. Christopher Flach, Ph.D., Plaintiff stated that she was last employed in 2015.  (R. 303.)

70.)  When Plaintiff sought medical attention, she received an X-ray at the hospital, learned that she "had back problems," and received two magnetic resonance imaging ("MRI") scans from a doctor who informed her of "how severe the back problem was."  (R. 67.)  Plaintiff also received a nerve conduction test, a discogram, radiofrequency ablation, and spinal injections.  (R. 67.)  Plaintiff had several series of injections in her back, but they only alleviated her pain for "maybe two or three days."  (R. 67–68.)  In September of 2018, Plaintiff had surgery to relieve the pain in her back.  (R. 67.)  The surgery was only successful "[t]o some degree," and Plaintiff continued to experience throbbing back pain.  (R. 70.)  After the surgery, Plaintiff began to experience numbness in her legs and feet, particularly on her right side, that interfered with her ability to walk.  (R. 68.)  She also had increased difficulty standing.  (R. 69–70.)  Plaintiff began using a doctor-prescribed cane and walker after the surgery.  (R. 76.)  At the time of the hearing, Plaintiff was attending physical therapy three times a week which she described as "[s]ometimes" helpful.  (R. 70–71.)  Due to the pain, Plaintiff was "mostly in bed[] all day" and was prescribed oxycodone, gabapentin, and ibuprofen, among other medications, but avoided taking oxycodone because it made her "sleep all the time."  (R. 71–72.)

Plaintiff also suffered from debilitating migraine headaches approximately three times a week that lasted for several hours and required her to rest in bed in the dark.  (R. 72–73.)  Doctors prescribed her medication that caused the migraines to "ease up just a little bit," but were unable to determine their cause.  (R. 73.)

At the time of the hearing, Plaintiff was also receiving psychiatric treatment for bipolar disorder and depression.  (R. 73.)  Her treatment plan included a monthly visit to the psychiatrist and a weekly appointment with a psychologist.  (R. 73.)  The pain in Plaintiff's back and her inability to work contributed to her worsening depression.  (R. 73–74.)

4

Plaintiff lives with her daughter, who was fourteen at the time of the hearing. (R. 74, 76.) Her daughter assists her with chores around the house, laundry, and food shopping. (R. 74–75.) Plaintiff orders groceries to be delivered to her home and carried upstairs to her apartment, and Plaintiff's daughter carries their clothes to the laundromat because Plaintiff is unable to do so. (R. 75.) Plaintiff does not drive, has not traveled outside of the city, and uses a car service for doctors' appointments. (R. 75–77.) Plaintiff traveled to the hearing by taxi. (R. 76–77.)

### ii. The VE's testimony

The VE testified at the December 2018 hearing via telephone. (R. 58.) The VE categorized Plaintiff's past work as a custodian as "unskilled" and "classified as medium" but "performed as heavy." (R. 82.) The ALJ asked the VE whether a hypothetical individual of the same age, educational background, and with the same work history as Plaintiff, who was limited to light exertion and could never stoop, crouch, or have exposure to respiratory irritants, could perform Plaintiff's past work. (R. 82.) The VE testified that the hypothetical individual could not perform Plaintiff's past work, but that this same hypothetical individual could perform light, unskilled work, including as a "marker," a "lens matcher," and as a "cashier/self-service." (R. 82–84.) If the hypothetical individual were also off-task twenty percent of the time, this additional limitation would "eliminate all work." (R. 84.)

### b. The ALJ's decision

The ALJ conducted the five-step sequential analysis required by the SSA.[4] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2016,

---

[4] The five-step sequential process outlined by the SSA considers:

    (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

the disability onset date, through her last insured date of December 31, 2017.  (R. 42.)  At step

two, the ALJ found that Plaintiff had the following severe impairments: "lumbar spondylosis;

degenerative disc disease of the lumbar spine, with radiculopathy; asthma; and headaches."  (R.

42.)  These impairments "significantly limit[ed] [Plaintiff's] ability to perform basic work

activities."  (R. 42.)  The ALJ also concluded that Plaintiff's gastroesophageal reflux disease and

gastritis were "non-severe" and "would have no more than a minimal effect on [Plaintiff's]

ability to meet the basic demands of work activity."  (R. 42.)  In addition, the ALJ found

Plaintiff's unspecified anxiety disorder to be non-severe because it "did not cause more than

minimal limitation in [Plaintiff's] ability to perform basic mental work activities," and Plaintiff

"reported on several occasions that her symptoms were manageable with psychotropic

medication"; moreover, she had been noncompliant with that regimen.  (R. 43.)

    At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments severe enough to meet the requirements of 20 C.F.R. Part 404, Subpart P, Appendix

1.  (R. 44.)  The ALJ noted that "[n]o treating, examining, or non-examining medical source has

mentioned findings or rendered an opinion that the [Plaintiff's] impairments, singly or in

combination, met or medically equaled the criteria of any listed impairment."  (R. 45.)  The ALJ

considered listing 1.04, Disorders of the Spine, and found that Plaintiff's spinal condition did not

meet the requirements of that listing because she did not suffer from nerve root or spinal cord

---

equals the severity of the specified impairments in the Listing of
Impairments; (4) based on a 'residual functional capacity'
assessment, whether the claimant can perform any of his or her past
relevant work despite the impairment; and (5) whether there are
significant numbers of jobs in the national economy that the
claimant can perform given the claimant's residual functional
capacity, age, education, and work experience."

*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v.
Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

compromise, with neuro-anatomic distribution of pain, limitation of motion in her spine, and motor loss.  (R. 45.)  The ALJ also concluded that Plaintiff's asthma "did not meet Listing 3.03 Asthma" because the record did not contain required forced expiratory volume results or "three hospitalizations within a [twelve]-month period and at least [thirty] days apart."  (R. 45.)  At step four, the ALJ found that "[Plaintiff] had the residual functional capacity to perform light work" but "could never stoop or crouch, . . . [or] have exposure to respiratory irritants."   (R. 45.)  The ALJ also found that Plaintiff "would be off-task [five percent] of the time due to headaches."  (R. 45.)

   The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms" but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. 46.)  With respect to Plaintiff's spinal impairments, the ALJ found that Plaintiff's exam records showed "no sensory deficits" and "full muscle strength in the upper and lower extremities."  (R. 46.)  The ALJ assigned "great weight" to the opinion of Dr. Ram Ravi, M.D., that Plaintiff "had no limitations to sitting or standing" and only "mild limitations to walking, pushing, pulling, lifting, carrying, and overhead activities."  (R. 47.)  The ALJ assigned "little weight" to the opinion of Dr. Angela Hon, M.D., that "[Plaintiff] could not perform work due to lumbar and left shoulder pain" because it was "conclusory, contain[ed] vocational assessments outside of [Dr. Hon's] area of medical expertise, and [was] a statement on disability that is reserved to the Commissioner."  (R. 47.)  In addition, the ALJ noted that the "record does not establish a shoulder impairment."  (R. 47.)  The ALJ also assigned "little weight" to the opinion of Dr. Michael Ko, M.D., that "[Plaintiff] was limited to sitting, standing and/or walking for less than [two] hours; unscheduled breaks every

fifteen to twenty minutes for twenty to twenty five minutes; not lifting any weight; and being absent more than four days per month," because, although Plaintiff had an established treatment relationship with Dr. Ko, his opinion was inconsistent with the record.  (R. 47.)  The ALJ found that Dr. Ko's opinion was not consistent with "[Plaintiff's] ability to attend to her chores" and "findings of a steady gait and full motor strength" in examinations in April of 2017 by Dr. Ravi, September of 2017 at Pain Physicians NY, and November of 2017 by nurse practitioner SooWon Cho.  (R. 47.)  With respect to Plaintiff's asthma, the ALJ noted that an "internal medicine examination revealed no abnormality with [Plaintiff's] chest and lungs."  (R. 47.)  The ALJ also considered Dr. Ravi's opinion that Plaintiff "should avoid smoke, dust, and other respiratory irritants/triggers due to her history of asthma."  (R. 47.)  With respect to Plaintiff's headaches, the ALJ stated that "[Plaintiff's] brain in November 2016 was negative for any organic pathology."  (R. 47.)  The ALJ also considered Plaintiff's own statement that her "headaches were currently asymptomatic and stable," and a subsequent examination that "showed no headaches," (R. 47), and also took into consideration Dr. Ravi's opinion that Plaintiff "might require scheduled interruptions due to her history of headaches," (R. 47.).

In the final step of the analysis, the ALJ found that Plaintiff "was unable to perform past relevant work either as actually or generally performed" because the work "exceed[ed]" her RFC.  (R. 48.)  However, the ALJ noted that "considering [Plaintiff's] age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] could perform," such as marker, "Cashier II," or lens matcher.  (R. 48–49.)  The ALJ concluded that Plaintiff was "not disabled."  (R. 49.)

## II.   Discussion

### a.   Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam).   "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).   Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)).   In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).   If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision. *See Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at 112)); *see also Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

### b.   The ALJ erred by failing to explain his conclusion that Plaintiff did not satisfy Listing 1.04

Plaintiff argues that the ALJ erred at step three of the five-step sequential analysis by concluding that Plaintiff's back problems did not meet the requirements of Listing 1.04 because Plaintiff's documented spinal conditions and symptoms meet or equal the requirements of the

listing. (Pl.'s Mem. 14–17.) Plaintiff asserts that "the ALJ's failure to make this finding is a clear error of law that should lead to a remand solely for the calculation of benefits." (*Id.* at 17.)

The Commissioner argues that Plaintiff failed to meet her burden of showing that her impairment meets or equals the severity of Listing 1.04 because Plaintiff's past examinations showed "full upper and lower extremity strength . . . [and] normal sensation." (Comm'r Mem. 16.)

At step three of the five-step sequential process, the ALJ determines whether a claimant's impairment or combination of impairments is sufficiently severe to meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 C.F.R. § 404.1520(d); *Watson v. Berryhill*, 732 F. App'x 48, 50 (2d Cir. 2018) ("At Step Three, the ALJ determines whether the severe impairment identified at Step Two 'meets or equals one of [the] listings' contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 416.920(a)(4)(iii)."). If a claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d); *see also Watson*, 732 F. App'x at 50 (explaining that if the claimant meets or equals a listed impairment, "the claim is granted"); *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) ("The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." (citing 20 C.F.R. §§ 404.1520(d), 416.920(d))).

The claimant bears the burden of demonstrating that her impairments meet or are equal in severity to each of the medical criteria set forth in one of the listings. *See Claymore v. Astrue*, 519 F. App'x 36, 37 (2d Cir. 2013) ("The claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" (quoting *Brown v. Apfel*,

10

174 F.3d 59, 64 (2d Cir. 1999))); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007) (noting that it is the plaintiff's "burden to demonstrate that [her] disability [meets] all of the specified medical criteria of a spinal disorder" (internal quotation marks omitted) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990))).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan*, 493 U.S. at 530; *Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 360 F. App'x 240, 243 (2d Cir. 2010) (affirming determination that the plaintiff was not disabled because "at no point [in the record] is there any documented medical determination that meets all of the required criteria of any given impairment under the Listing of Impairments" (citing *Sullivan*, 493 U.S. at 530)).

Listing 1.04(A), titled "Disorders of the spine," (the "Listing"), provides in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.04A.[5]  Thus, to establish this Listing, a plaintiff must demonstrate that she suffered (1) nerve root or spinal cord compromise, with (2) neuro-anatomic distribution of pain, (3) limitation of motion in her spine, and (4) motor loss, accompanied by sensory or reflex loss and a positive straight-leg raising test.  *Id.*; *cf. Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 76 (2d Cir. 2012) ("Under Listing 1.04(A), such a disorder can be

---

[5]  Listing 1.04(A) was replaced by Listing 1.15 effective April 2, 2021.  *See* 85 Fed. Reg. at 79063, 2020 WL 7209986 (noting replacement of Listing 1.04 with 1.15); *Jones v. Kijakazi*, No. 20-CV-1765, 2021 WL 3856252, at *8 n.6 (D. S.C. Aug. 30, 2021) (same).  However, because Plaintiff's claim was brought before that the effective date, the Court applies Listing 1.04 to this case.

11

demonstrated by evidence of nerve root compression accompanied by sensory or reflex loss.").
To meet the listing, "all of the requirements of Listing 1.04(A) must be simultaneously present
on examination and continue, or be expected to continue, for at least [twelve] months."
*Monsoori v. Comm'r of Soc. Sec.*, No. 17-CV-1161, 2019 WL 2361486, at *4 (W.D.N.Y. June 4,
2019) (citing Acquiescence Ruling 15-1(4), *Radford v. Colvin: Standard for Meeting the Listing
for Disorders of the Spine with Evidence of Nerve Root Compression*, 80 F.R. 57418-02 (2015),
2015 WL 5564523(F.R.)).

An ALJ is required to explain his determination that a claimant failed to meet or equal the
listings "[w]here the claimant's symptoms as described by the medical evidence appear to match
those described in the [l]istings." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y.
2009); *see also Norman v. Astrue*, 912 F. Supp. 2d 33, 78–81 (S.D.N.Y. 2012) (examining the
medical record and reversing after there was not "sufficient uncontradicted evidence in the
record to provide substantial evidence for the conclusion that [the] plaintiff failed to meet step
three" (alteration, citation and internal quotation marks omitted)).  Nevertheless, "[a]n ALJ's
unexplained conclusion [at] step three of the analysis may be upheld where other portions of the
decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by
substantial evidence.'" *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citing *Berry v.
Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).  In *Berry*, the Second Circuit upheld an ALJ's
decision that the plaintiff did not meet a listed impairment, even where the ALJ failed to explain
the rationale for his decision, because the court was "able to look to other portions of the ALJ's
decision and to clearly credible evidence in finding that his determination was supported by
substantial evidence." *Berry*, 675 F.2d at 469.  In so doing, the Second Circuit cautioned that
"[c]ases may arise . . . in which we would be unable to fathom the ALJ's rationale in relation to

evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," and that such cases would warrant remand "for further findings or a clearer explanation for the decision." *Id.*; *see also Sanders*, 506 F. App'x at 76 (declining to remand at step three because although "the record contain[ed] evidence of nerve root compression, [it] also contain[ed] substantial evidence supporting the conclusion that there was no nerve root compression"); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112–13 (2d Cir. 2010) ("Here, although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination." (citing *Berry*, 675 F.2d at 469)); *Otts*, 249 F. App'x at 889 ("While the ALJ might have been more specific in detailing the reasons for concluding that [the plaintiff's] condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff, permits us to affirm this part of the challenged judgment." (citing *Berry*, 675 F.2d at 468)); *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability")).  By contrast, "where the evidence on the issue of whether a claimant meets or equals the listing requirements is [in] equipoise and 'credibility determinations and inference drawing is required of the ALJ' to form his conclusions at step [three], the ALJ must explain his reasoning." *Ryan*, 5 F. Supp. 3d at 507–08 (alteration omitted) (quoting *Berry*, 675 F.2d at 469).

The Court finds that remand is warranted because Plaintiff's condition satisfies the first two elements of Listing 1.04(A) and the ALJ failed to explain how he reconciled the conflicting evidence as to whether Plaintiff's condition satisfies the last two elements.  As a result, the Court is unable to assess whether the ALJ's decision is supported by substantial evidence.

### i.    Nerve root or spinal cord compression

The medical record contains some evidence that Plaintiff experienced nerve root or spinal cord compression as required by the Listing.  *See* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.04A. On June 12, 2017, an MRI of Plaintiff's lumber spine showed "compression of the L3 nerve root" associated with "[d]isc bulging and associated degenerative changes."  (R. 477.)  The ALJ acknowledged, and the Commissioner does not challenge, this evidence of nerve root compression.  (R. 46; Comm'r Mem. 15–16.)

### ii.    Neuro-anatomic distribution of pain

The record contains some evidence that Plaintiff experienced "neuro-anatomic distribution of pain" as required by the Listing.  *See* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.04A.  On July 31, 2017, Dr. Ko reported that Plaintiff was experiencing numbness and tingling in her toes and observed that Plaintiff had a diminished ankle reflex.[6]  (R. 383–84.)  The Commissioner argues that Plaintiff's complaints of tingling and numbness are "subjective," and contrary to other examinations that showed normal sensation, such as Plaintiff's examination by Dr. Mustafa Kagalwalla, M.D., on November 2, 2016.  (Comm'r Mem. 16; *see, e.g.*, R. 274.) However, subjective complaints can provide some evidence in support of the element.  *See* *Norman*, 912 F. Supp. 2d at 78–79 (finding that the plaintiff's subjective complaints "of

---

[6]  While the Commissioner contends that "several" of Plaintiff's citations are to examinations conducted after her insured status expired on December 31, 2017, (Comm'r Mem. 16), this examination occurred during the relevant period.

radiating pain in his neck, shoulder, lower back and legs" provided "some evidence" that the plaintiff met the requirement of listing 1.04(A)); *Muntz v. Astrue*, 540 F. Supp. 2d 411, 420 (W.D.N.Y. 2008) (concluding that the record "contain[ed] appreciable evidence of neuro-anatomic distribution of pain" where "several reports from plaintiff's treating and examining physicians note back pain with radiation of numbness and weakness into plaintiff's right leg").

### iii.   Limitation of motion of the spine

The record contains contradictory evidence as to whether Plaintiff exhibited "limitation of motion of the spine" during the relevant period.  *See* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.04A.  Plaintiff's examinations on April 4, July 24, July 31, and August 28, 2017 by Dr. Tamer Elbaz, M.D., and Dr. Ko showed that Plaintiff had a decreased spinal range of motion due to pain.  (R. 814, 816, 820, 824.)  However, during medical examinations on February 27, March 31, April 1, and December 28, 2017, by Dr. Hon, by a doctor who treated Plaintiff only once, and during two emergency room visits, respectively, the medical examiners concluded that Plaintiff had a normal spinal range of motion.  (R. 456, 462, 610, 635.)  The ALJ's analysis does not explain how he reconciled this conflicting evidence and therefore, the Court cannot determine whether the ALJ's decision is supported by substantial evidence.  *See Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 486 (S.D.N.Y. 2018) (remanding where "it appear[ed] that evidence could be found in the record that, if given sufficient weight, meets all the elements of Listing 1.04" but the ALJ did not assess the conflicting medical evidence); *Howarth v. Berryhill*, No. 16-CV-1844, 2017 WL 6527432, at *8 (D. Conn. Dec. 21, 2017) (remanding because the ALJ did not articulate the specific reasons why the listing was not met, and because "the court [could not] discern the ALJ's rationale because the ALJ failed to address the evidence in the

record on either side, the ALJ's failure to articulate is itself a sufficient basis to remand" (citing *Rivera v. Astrue*, No. 10-CV-1035, 2014 WL 5419529, at *14 (D. Conn. Oct. 22, 2014))).

### iv.   Motor loss accompanied by sensory or reflex loss

The record also contains contradictory evidence as to whether Plaintiff experienced "motor loss . . . accompanied by sensory or reflex loss," and a positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.04A.  The Listing defines "motor loss" as "atrophy with associated muscle weakness" or "muscle weakness."  *Id.*  Appendix 1 further specifies that "significant motor loss" may be shown by an "[i]nability to walk on the heels or toes, to squat, or to arise from a squatting position."  20 C.F.R. Pt. 404, Subpart P, App. 1 § 1.00(E)(1); *see also Abualteen v. Saul*, No. 19-CV-2637, 2020 WL 5659619, at *25 (S.D.N.Y. Sept. 23, 2020) (citing § 1.00(E)(1) and noting that the plaintiff presented some evidence of motor loss through a consultative examination showing that he "could not walk on his toes due to his lower back pain and had difficulty walking on his heels"); *Roche v. Berryhill*, No. 17-CV-4524, 2018 WL 560207, at *15 (S.D.N.Y. Jan. 25, 2018) (citing § 1.00(E)(1) and noting the plaintiff's ability to "walk[] on heels with difficulty, but not toes because of back pain" warranted consideration of Listing 1.04(A)).

Some findings in the record support the conclusion that Plaintiff's impairment meets this requirement of Listing 1.04(A), while other findings suggest otherwise.  During the consultative examination with Dr. Ravi on April 1, 2017, Plaintiff exhibited moderately antalgic gait and was unable to walk on her heels and toes, and she declined testing for squatting and a straight-leg raising test due to pain.  (R. 299–300.)  At that examination and during a separate examination the prior day by Dr. Robert Simon, M.D., who treated Plaintiff only on this one occasion, (R. 461–63), he reported that Plaintiff had full strength in her upper and lower extremities with no

sensory deficits or muscle atrophy, (R. 300, 462).  Approximately two months earlier, on February 28 and March 21, 2017 during examinations by Dr. Hon, Plaintiff exhibited a normal gait and station, normal tiptoe and heel walk, and a negative straight-leg raising test.  (R. 456, 458.)  During her testimony on December 10, 2018, Plaintiff testified that numbness in her legs and feet made walking difficult, but that the numbness started after her September 2018 back surgery (after the last insured date) and gave contradictory testimony as to whether she had trouble walking before surgery.  (R. 67–70.)  When asked, Plaintiff first answered "[n]o," but when asked a second time, she responded that she could walk "maybe two blocks" before the surgery and could "hardly walk to the bathroom."  (R. 68–69.)

Plaintiff has shown that the record contains evidence in support of the finding that she meets Listing 1.04(A).  Although the record contains conflicting evidence as to whether Plaintiff's back impairment satisfies all the criteria of the listing, the ALJ did not explain his reasoning in concluding that it does not, instead simply setting forth all listing criteria and then stating, in a conclusory manner, that Plaintiff did not meet the listing.  (R. 45.)  Accordingly, the Court remands the case for further administrative proceedings, including a fuller explanation of whether Plaintiff has met or equaled Listing 1.04, and addressing the conflicting evidence.  *See Perozzi*, 287 F. Supp. 3d at 485–86 (remanding where the record contained conflicting evidence as to whether the plaintiff met Listing 1.04(A) and the ALJ had determined that the plaintiff did not meet the listing without explaining why); *Torres v. Colvin*, No. 14-CV-479, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2015) (remanding ALJ's decision that "lack[ed] a meaningful discussion of Listing 1.04(A), which le[ft] this [c]ourt unable to assess whether the ALJ's decision [was] supported by substantial evidence" (first citing *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983) and then citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)));

*Norman*, 912 F. Supp. 2d at 41 (remanding "[i]n light of the ALJ's failure to explain his reasoning and the conflicting medical evidence in the record" as to whether the plaintiff's impairment met listing 1.04(A)).

### c.   The ALJ erred in determining Plaintiff's RFC

Plaintiff argues that the ALJ erred in determining her RFC by (1) failing to consider all of her impairments, (2) improperly analyzing the medical evidence, and (3) making improper medical findings.  (Pl.'s Mem. 17.)  In particular, Plaintiff argues that the ALJ failed to consider the unrebutted medical evidence of Plaintiff's pain despite her uncontested credibility, impermissibly replaced the expertise of the medical experts with his own determination by choosing a five percent off-task limitation for headaches, and improperly concluded that Plaintiff's ability to perform some activities of daily living suggested that she was able to hold down a full-time job.  (*Id.* at 17–21.)

The Commissioner argues that based on the record, Plaintiff's statements, objective medical evidence, and Dr. Ravi's opinion, the ALJ (1) appropriately considered all severe and non-severe impairments and stated that he was doing so in determining the RFC, (2) correctly analyzed the medical evidence, and (3) properly concluded Plaintiff was not disabled based on the medical findings in the record.  (Comm'r Mem. 13–24.)  In addition, the Commissioner asserts that the ALJ suitably accommodated Plaintiff's headaches by allowing her to be off-task five percent of the time.  (*Id.*)

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history."  *Stover v. Astrue*, No. 11-CV-172, 2012 WL 2377090, at *6 (S.D.N.Y. Mar. 16, 2012) (citing *Mongeur*, 722 F.2d at 1037); *see also Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) ("In

assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain." (quoting 20 C.F.R. § 416.945(a)(3))). An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545; *Rutkowski v. Astrue*, 368 F. App'x 226, 230 (2d Cir. 2010) ("A claimant's RFC is the most he can do in a work setting despite his physical and mental limitations." (citing 20 C.F.R. § 404.1545(a)(1))). With respect to a claimant's physical abilities, an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis. *Id.* § 404.1545(b); *Zacharopoulos v. Saul*, No. 19-CV-5075, 2021 WL 235630, at *11 (E.D.N.Y. Jan. 25, 2021) (same) (quoting *Crocco v. Berryhill*, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017)). For example, "a limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Crocco*, 2017 WL 1097082, at *15.

Although a plaintiff's activities of daily living are relevant to the ALJ's RFC determination, "a claimant need not be an invalid to be found disabled" under the Social Security Act, and the relevant inquiry is whether the plaintiff is capable of full-time work. *Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir. 1998) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)) (concluding that the plaintiff's reported activities of reading, watching television, and occasionally leaving his house to attend church and go shopping did not provide substantial evidence for the conclusion that he was capable of sedentary work); *see also Giddings v. Astrue*, 333 F. App'x 649, 654 (2d Cir. 2009) (finding that the ALJ's RFC was not supported by

substantial evidence because, among other defects, it "[did] not account for, or address, [the plaintiff's] statements regarding her inability to continuously change positions or her need to lie down" after performing activities of daily living for approximately half an hour); *Patrick M. v. Saul*, No. 18-CV-290, 2019 WL 4071780, at *10 (N.D.N.Y. Aug. 28, 2019) ("The [p]laintiff's ability to attend medical appointments and engage in other daily activities of limited duration do[es] not correlate to the [p]laintiff's ability to stay on-task during an eight-hour work day or the likelihood that he would miss work several days per month because of exacerbations of his chronic back or neck pain."); *Connie S. v. Comm'r of Soc. Sec.*, No. 18-CV-147, 2019 WL 2766712, at *6 (N.D.N.Y. July 2, 2019) (concluding that the "plaintiff's reported activities of daily living do not indicate, in a vacuum, that plaintiff is capable of the degree of function set forth in the ALJ's RFC" where "the record demonstrate[d] that plaintiff could not perform simple house chores for any extended period of time before requiring a break due to her pain").

The ALJ erred in concluding that Plaintiff would be off-task for only five percent of the time without addressing record evidence inconsistent with that determination and while interpreting a doctor's statement that she was asymptomatic to mean that she no longer had headaches. On November 2, 2016, Plaintiff told Dr. Kagalwalla that she was experiencing worsening, day-long migraines associated with nausea, vomiting, and sensitivity to light and sound. (R. 274.) Plaintiff was referred to a specialist who conducted an MRI and determined that her headaches did not have an organic cause. (R. 282.) At the follow-up appointment to interpret the results on January 23, 2017, Plaintiff continued to complain of migraines. (R. 282.) At the hearing on December 10, 2018, Plaintiff testified that she had headaches three days per week, that they lasted for several hours, and that during that period, Plaintiff is "lying in bed in the dark." (R. 72–73.) The ALJ's finding that Plaintiff would be off-task at most five percent of

the time due to migraines is not consistent with Dr. Kagalwalla's notes or with Plaintiff's

testimony — that Plaintiff would be sensitive to light or sound for periods of several hours

multiple days per week — and the ALJ does not specify any evidence relied on to reach this

conclusion.  *See Tasha W. v. Comm'r of Soc. Sec.*, No. 20-CV-731, 2021 WL 2952867, at *8

(N.D.N.Y. July 14, 2021) (holding that "the ALJ failed to draw the necessary connection

between Plaintiff's daily activities and [her ability to work]" where the plaintiff testified that she

suffered episodes of vertigo that could last several hours, required her to stand still and

sometimes lie down, and left her dependent on others to care for her infant during the episodes).

In addition, the ALJ's reliance on Dr. Ravi's statement that Plaintiff was

"asymptomatic," (R. 297), which the ALJ interpreted to mean that she no longer experiences

headaches, was unsupported in light of Dr. Ravi's other statements that she had "stable"

headache symptoms that were "episodic, occurring daily."  (R. 297); *see Jackson v. Berryhill*,

694 F. App'x 39, 41 (2d Cir. 2017) (remanding where the ALJ erroneously believed that certain

diagnoses were ruled out, where instead "the repeated references in the charts to rule out

diagnoses . . . indicated that the disorders were possible diagnoses that had *not* been ruled out").

Further, the ALJ also erred in relying on Plaintiff's participation in some activities of

daily living, such as "attending to her chores, including cleaning and laundry, and doing her daily

activity routine," consistent with medical findings of normal sensation and motor strength, (R.

46), without considering the fact that Plaintiff's ability to engage in these activities was "limited

due to pain," (R. 298), or that Plaintiff performed these activities with assistance.  For example,

Plaintiff's daughter provides necessary assistance in performing household chores, and Plaintiff

does not lift bags of laundry or groceries.  (R. 75–77, 298.)  Thus, Plaintiff's description of her

activities of daily living do not lend support to the ALJ's RFC determination that she is capable

of light work.[7] *See Kevin R. v. Comm'r of Soc. Sec.*, No. 20-CV-6533, 2021 WL 4025534, at *4 (W.D.N.Y. Sept. 3, 2021) ("[T]here is a critical difference between activities of daily living (which one can do at his own pace when he is able) and keeping a full-time job." (*Henderson v. Berryhill*, 312 F. Supp. 3d 364, 370 (W.D.N.Y. 2018))).

## III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.  The Commissioner's decision is vacated, and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of Court is directed to close this case.

Dated: September 17, 2021
         Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge

---

[7]  Plaintiff also argues that the ALJ erred in assigning the opinion of treating physician Dr. Ko "little weight," that the opinion of consultative examiner Dr. Ravi, which the ALJ gave "great" weight, was weighted too heavily and inconsistent with the record, and that the ALJ misunderstood the opinion of Dr. Hon, which was that Plaintiff should do no work that would exacerbate her pain.  (Pl.'s Mem. 22–24.)  In light of the Court's decision to remand this case for further administrative proceedings, the Court declines to address these arguments and instructs the ALJ, upon remand, to assess the weight of the opinions in the record.